IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. _____ |
| ) | Jury Trial Demanded |
| ) | |
| GWINNETT COUNTY PUBLIC ) | |
| SCHOOLS, JONATHAN SANKS, ) | |
| and DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

## Introductory Statement

1. This case arises from years of sexual assault at Gwinnett County Public Schools (the "District"), which the District tried to sweep under the rug—as in other cases, sadly.

2. During the period in question, Defendant Jonathan Sanks was the head football coach at Berkmar High School, a school within the District. Sanks was a prominent and powerful employee—and also a known sexual

predator. Sanks began grooming Plaintiff Jane Doe when she was only a freshman, and ultimately recruited her into a position of "working" for him with the football team. Sanks used that position to further his sexual advances, which progressed from "hugging" to sodomy to rape. The abuse continued for years—often while other high-level District employees were in the very next room. The "relationship" was known throughout the school. When Jane Doe was a senior, the "relationship" apparently became untenable for the District to deny any longer, so the District conducted a sham "investigation," permitted Sanks to "resign"—and then simply transferred him to another District school.

3. Sanks stole Jane Doe's high school years from her. Since then, she has suffered in silence. But recently the District sought her assistance responding to another sexual assault investigation. Enough is enough. Ms. Doe cannot let the District continue to fail to protect students. And she cannot let Sanks and his conspirators get away with it any longer. This case is necessary to right those wrongs.

## Jurisdiction and Venue

4. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States, including Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*), 42 U.S.C. § 1983, and 42 U.S.C. § 1985. The Court has supplemental jurisdiction over Ms. Doe's state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the federal question claims.

5. Venue is proper in the Court's Atlanta Division because a substantial part of the events and omissions giving rise to the controversy occurred in that division. *See* 28 U.S.C. § 1391(b)(2).

## Parties

6. Plaintiff Jane Doe is a female victim of sexual abuse, who was a minor enrolled in Gwinnett County Public Schools during the period in question. She is proceeding anonymously to preserve her privacy while vindicating her rights.[1] She is a resident of Georgia and this Court's Atlanta Division.

---

[1] The facts alleged in this complaint should allow Defendants to ascertain Ms. Doe's identity. Upon entry of a protective order, Ms. Doe will provide her name to counsel for Defendants.

7. Defendant Gwinnett County Public Schools is the institution charged with providing safe public education in Gwinnett County, Georgia; the Board of Education is the District's governing body. For purposes of this case, Gwinnett County Public Schools and its Board are used interchangeably. The District has received millions of dollars in federal funding and is subject to Title IX of the Education Amendments of 1972. The District is a resident of Georgia and this Court's Atlanta Division.

8. Defendant Jonathan Sanks is the former head football coach at the District's Berkmar High School. Upon information and belief, he is a resident of Georgia and this Court's Atlanta Division.

9. Defendant Does No. 1-10 are District officials who participated in the events and omissions giving rise to this controversy and are liable therefor. Because their acts and identities are known to the named Defendants, but are not reasonably known to Ms. Doe at this time, Ms. Doe intends to amend her complaint to allege the identities of those individuals during discovery.

**Factual Allegations**

10. Ms. Doe was enrolled at Berkmar High School from 2011-2015.

11. During that period, Sanks was the head football coach. A former high school and college athletic star, and up-and-coming high-school coach, Sanks held a position of prominence and influence at Berkmar and within the District. His 2010 hiring was announced with fanfare, as he was expected to lead Berkmar to athletic success.[2] Sanks's entourage included assistants Burdette and Hill.

12. During Ms. Doe's freshman year (2011-2012), Sanks began grooming her for victimization. Sanks knew he could have his way if he could prey on the age and power imbalance and make Ms. Doe feel special. He began by "noticing" her, soliciting her friendship, and then "recruiting" her to assist with the football program.

13. The football assistant position gave Sanks constant access to Ms. Doe, as well as an excuse for spending time with a child twenty years his junior. Ms. Doe was both intimidated and impressed by Sanks, whose head football coaching job gave him an aura of power, and which he used to coerce and manipulate her.

---

[2] *See, e.g.*, Will Hammock, "Getting to Know . . . Jonathan Sanks," *Gwinnett Daily Post* (July 14, 2010), https://www.gwinnettdailypost.com/archive/getting-to-know-jonathan-sanks/article_95587d7c-51a4-59bb-aca5-e4e69a881332.html.

14. Sanks began normalizing inappropriate touching through hugging and other physical contact. He also used an "emotional connection" to prey on Ms. Doe.

15. Ultimately, Sanks progressed by coercing Ms. Doe into sexual acts. He began with sodomy, and once she turned 16—apparently thinking the rules had changed—he pressured Ms. Doe into having intercourse. The sexual "relationship" lasted into Ms. Doe's senior year. Sanks frequently forced Ms. Doe to have sexual contact on District grounds. When she would resist, Sanks would overcome her physically and through manipulation.

16. Multiple District officials with the power and responsibility to stop Sanks from preying on Doe had actual knowledge of his acts. To take just one example, Sanks would repeatedly lure Ms. Doe into his office and keep her there with the door locked while District personnel, including assistant coaches Burdette and Hill, were in the room next door. Similarly, the "relationship" was well known among the football team, and District personnel frequently observed Sanks touching Ms. Doe in ways that were clearly inappropriate as between a teacher in his mid-30s and a teenage girl. Upon information and belief, multiple other District personnel in leadership

positions also knew of the "relationship." Yet for years the District failed to intervene and protect Ms. Doe.

17. During her senior year, something—currently unknown to Ms. Doe—seems to have unsettled the District. During lunch, District official Ms. Egan abruptly summoned Ms. Doe to a conference room. A District police officer was present. They questioned Ms. Doe about her "relationship" with Sanks. Fearful, traumatized, and uncertain whom to trust, she could not bring herself to admit to being a victim for years. That was enough for the District to "close" the investigation. They didn't even ask to see Ms. Doe's cell phone, in which text messages would have revealed the full extent of the abuse. Everyone knows if you want to find out what a teenager is really up to, you have to examine their phone. The District's glaring failure to do so strongly indicates that the "investigation" was a sham—the District didn't want to deal with the truth. And the existence of the sham investigation further demonstrates that District leadership had actual knowledge of the abuse for some time prior.

18. Later, Sanks was allowed to "resign," with the under-performance of the football team given as a convenient excuse.[3] That excuse doesn't even pass the smell test. At least in this part of the country, losing football coaches get fired in the fall, not over spring break. And all the District did was move Sanks to a coaching position at another District School (Grayson High School), giving him a new pool of potential victims. The District has a history of using "resignations" to hide teachers who have been sexually assaulting students, as in, for example, the Villie Jones case. *See, e.g.*, *Bazile v. Gwinnett County School District et al.*, No. 1:19-cv-05010-MHC (N.D. Ga.); *Clark-Ashford v. Gwinnett County School District et al.*, No. 1:19-cv-2782-MHC (N.D. Ga.) (documenting how the District allowed a known sexual predator to "resign" with pay rather than terminating him).

19. Ms. Doe has suffered since first being victimized as a teenager. The trauma caused and continues to cause pain and suffering, and has placed emotional limitations on her ability to function as a normal young adult.

---

[3] Will Hammock, "Jonathan Sanks Resins as Berkmar Head Football Coach," *Gwinnett Daily Post* (April 13, 2015), https://www.gwinnettdailypost.com/archive/jonathan-sanks-resigns-as-berkmar-head-football-coach/article_c48b90bb-9eb6-5bba-b9f5-cb4c115fbb0e.html.

20. The District failed in its most basic responsibility to Ms. Doe: to keep her safe. Through this case, Ms. Doe seeks to hold the District, Sanks, and his enablers accountable for their misconduct.

## Causes of Action

## Count One: Violation of Title IX (against the District)

21. The foregoing paragraphs are incorporated as if set forth herein.

22. Gwinnett County Public Schools takes millions in federal funding and is subject to Title IX's requirement to protect students like Ms. Doe from foreseeable sexual abuse.

23. District personnel with the ability to intervene and prevent further abuse had actual knowledge of Sanks's abuse, yet failed to stop it. Further, the District's "investigation" was a sham and will be shown to be clearly unreasonable, which further constituted deliberate indifference to Ms. Doe's right to an education free of sex discrimination.

24. The District discriminated against Ms. Doe on the basis of sex and denied her right to an equal education, in violation of Title IX.

25. Doe suffered damages as a result.

### Count Two: Violations of Georgia Laws (against Sanks)

26. The foregoing paragraphs are incorporated as if set forth herein.

27. By sexually abusing Doe, Sanks committed numerous violations of Georgia law, including but not limited to the following offenses:

    a. OCGA § 16-6-5.1(b)(1) (unlawful sexual contact by an employee of a school against a student)

    b. OCGA § 16-6-2 (sodomy and aggravated sodomy)

    c. OCGA § 16-6-4 (child molestation and aggravated child molestation)

    d. OCGA § 16-6-5 (enticing a child for indecent purposes)

    e. OCGA § 16-6-15 (solicitation of sodomy)

    f. OCGA § 16-6-22.1 (sexual battery)

28. Doe suffered damages as a result.

### Count Three: Conspiracy Under 42 U.S.C. § 1985 (against all Defendants)

29. The foregoing paragraphs are incorporated as if set forth herein.

30. All Defendants knowingly conspired to permit Sanks's continued abuse of Doe, depriving her of her rights under Title IX.

31. Doe suffered damages as a result.

### Count Four: Civil Conspiracy (against all Defendants)

32. The foregoing paragraphs are incorporated as if set forth herein.

33. All Defendants knowingly conspired to permit Sanks's continued abuse of Doe.

34. Doe suffered damages as a result.

### Count Five: Punitive Damages (against all Defendants)

35. The foregoing paragraphs are incorporated as if set forth herein.

36. Defendants' conduct was willful and wanton, justifying an award of punitive damages where available under law.

### Count Six: Declaratory Relief (against all Defendants)

37. The foregoing paragraphs are incorporated as if set forth herein.

38. Defendants violated Ms. Doe's rights under federal law as set forth herein.

39. Doe is entitled to declaratory relief.

### Prayer for Relief

40. Jane Doe respectfully requests the following relief:

    a. Trial by jury where available under law;

    b. Compensatory and punitive damages in an amount to be determined at trial;

   c. A declaration pursuant to 28 U.S.C. § 2201 that Defendants violated Plaintiff Jane Doe's rights under the laws of the United States;

   d. Costs and attorney's fees pursuant to 42 US.C. § 1988; and

   e. All other appropriate relief.

Respectfully submitted this 2nd day of September, 2020.

                                                          s/ Aaron K. Block
                                                          Aaron K. Block
                                                          Georgia Bar No. 508192
                                                          Andrea Nicole Perry Block
                                                          Georgia Bar No. 531027
                                                          The Block Firm LLC
                                                          404-997-8419
                                                          aaron@blockfirmllc.com
                                                          andrea@blockfirmllc.com
                                                          *Counsel for Plaintiff Jane Doe*

**Certificate of Service**

I hereby certify that I served the foregoing using the Court's CM/ECF system.

s/ Aaron K. Block