UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANE DOE,

    Plaintiff,

v.

GWINNETT COUNTY SCHOOL
DISTRICT, JONATHAN SANKS and
DOES 1-10,

    Defendants.

CIVIL ACTION NO.
1:20-CV-03641-JPB

## ORDER

This matter is before the Court on Gwinnett County School District's ("Defendant") Motion for Summary Judgment [Doc. 86]. This Court finds as follows:

## PROCEDURAL HISTORY

Jane Doe ("Plaintiff") filed this action against Defendant and Jonathan Sanks on September 2, 2020, and alleged that while she was in high school, Sanks sexually harassed and assaulted her repeatedly. [Doc. 1]. On November 13, 2020, Plaintiff filed a First Amended Complaint for Damages and Declaratory Relief wherein she asserted the following causes of action: (1) Post-Assault Deliberate Indifference in Violation of Title IX; (2) Hostile Environment and Official Policy

in Violation of Title IX; (3) Violations of the Equal Protection Clause; (4) Violations of the Due Process Clause; (5) Violations of Georgia Laws (only brought against Defendant Sanks); (6) Conspiracy under 42 U.S.C. § 1985; (7) Civil Conspiracy under Georgia Law; (8) Punitive Damages; and (9) Declaratory Relief.  [Doc. 23].

On April 13, 2021, Defendant filed its Motion for Summary Judgment as to all counts.[1]  [Doc. 86].  In response, Plaintiff abandoned some of her causes of action by failing to address all of Defendant's arguments.  [Doc. 102].  "Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party."  Burnett v. Northside Hosp., 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004).  Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Counts 2, 3, 4 and 6 because Plaintiff made no arguments as to those claims.  In the analysis that follows, the Court will analyze

---

[1] Plaintiff filed a nine-count First Amended Complaint.  While Defendant's Motion for Summary Judgment was pending, Counts 7 and 8 were dismissed pursuant to Defendant's Partial Motion to Dismiss [Doc. 100]. Count 5 was only asserted against Sanks.  As a result, the remaining claims asserted against Defendant are as follows: Counts 1 through 4, Count 6 and Count 9.  Count 9, however, is derivative of Plaintiff's other causes of action because she simply seeks a declaration that Defendant violated her federal rights. Thus, Plaintiff cannot succeed on Count 9 if her other claims fail.

whether Defendant is entitled to summary judgment as to Count 1—the sole remaining claim asserted against Defendant.

## BACKGROUND

The Court derives the facts of this case from Defendant's Statement of Undisputed Material Facts [Doc. 86-2], Plaintiff's Response to Defendant's Statement of Undisputed Material Facts [Doc. 102-1], Plaintiff's Statement of Additional Material Facts [Doc. 102-2] and Defendant's Response to Plaintiff's Statement of Additional Material Facts [Doc. 103-1]. The Court also conducted its own review of the record.

The Local Rules of this Court require a respondent to a summary judgment motion to include with its responsive brief "a response to the movant's statement of undisputed facts." LR 56.1(B)(2)(a), NDGa. The Local Rules make clear that the Court

> will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1).

LR 56.1(B)(2)(a)(2), NDGa. Similarly,

> if respondent provides a statement of additional material facts, then, within the time allowed for filing a reply, the movant shall file a response to each of the respondent's facts. The range of acceptable responses is limited to: (a) an objection to the admissibility of the evidence upon which the respondent relies, (b) an objection pointing out that the respondent's evidence does not support the respondent's fact[,] (c) an objection on the ground that the respondent's fact is not material or does not otherwise comply with the provisions set out in LR 56.1(B)(1), and (d) a concession that the Court can properly consider the respondent's evidence for purposes of the summary judgment motion.

LR 56.1(B)(3), NDGa.

In this case, the relevant facts stem from circumstances surrounding the alleged sexual harassment and abuse of Plaintiff by her teacher, Sanks. In essence, Plaintiff brings this claim alleging that Defendant is liable under Title IX because the actions taken by the school's administration failed to protect Plaintiff from Sanks's abuse. In accordance with the Local Rules, this Court will not consider unsupported facts or facts that do not meet the requirements of the Local Rules. The facts of this case, for the purpose of adjudicating the instant motion, are as follows:

Plaintiff was a student at Berkmar High School from 2011 to 2015. [Doc. 103-1, pp. 1-2]. When Plaintiff was a freshman, Plaintiff became a manager for the football team, which was coached by Sanks. Id. at 2-3. As part of Plaintiff's responsibilities as a student football manager, Plaintiff worked closely with Sanks.

[Doc. 102-1, pp. 12-13]. In addition to Plaintiff's role with the football team, Plaintiff's family (Plaintiff and her mother) and Sanks's family (including Sanks's wife and son) had a friendly social relationship outside of school. Id. at 14.

Jason Barker was employed as a security officer at Berkmar High School during the 2014-2015 school year. Id. As a security officer, Barker was responsible for monitoring the campus and reporting violations of school rules to the administration. Id. On March 24, 2015, Barker went to Sanks's office to speak with Sanks about a different student. Id. at 20. When he arrived, he found the office locked and observed that the lights were off. Id. Sanks, however, opened the door, and Barker saw Plaintiff leave Sanks's office from the side door. Id.

Barker reported the incident up the chain of command, where it reached Principal Al Taylor. [Doc. 103-1, p. 14]. The very next day, Principal Taylor reported the incident to the Department of Family and Children's Services ("DFACS") and ordered an investigation into the incident. [Doc. 102-1, p. 24]. While the investigation was pending, Sanks did not report for work pursuant to school policy. Id. at 31. As to the investigation, Principal Taylor instructed two of his assistant principals to interview Plaintiff. [Doc. 103-1, p. 14]. When the assistant principals first interviewed Plaintiff, Plaintiff denied that she was in Sanks's office entirely. [Doc. 102-1, p. 25]. Plaintiff, however, changed her story

after being confronted with surveillance footage that showed that she and Sanks were in Sanks's office together for approximately three minutes and thirty seconds. Id. at 23, 25. During the second interview, Plaintiff denied that anything inappropriate had occurred and reported that she went to Coach Sanks's office to retrieve her phone charger. Id. at 24-25. The assistant principals interviewed others too. In fact, they interviewed two football managers, Plaintiff's mother and Sanks. Id. at 28-30. All denied knowledge of any inappropriate conduct.

Principal Taylor also reported the incident to Joseph Barnes, a School Resource Officer. Id. at 31. Thereafter, Brianne Penn, another School Resource Officer, was assigned to assist with the investigation. Id. at 32. During this part of the investigation, Penn conducted a forensic interview of Plaintiff. Id. at 34. While Plaintiff denied that any misconduct occurred, Plaintiff asked Penn, "[s]o say if me and him had sex, what would that violation be?" Id. This question concerned Penn. Id. Penn and Barnes also interviewed Plaintiff's mother and Sanks. Id. at 39. Like before, Sanks denied any inappropriate conduct. Id. He did, however, terminate the interview by invoking his right to counsel. Id. This also concerned Penn. Id.

In addition to conducting numerous interviews, the investigators attempted to review Plaintiff's text messages and the contents of Sanks's computer. Id. at 40-

41. As to the text messages, Plaintiff had deleted them. Id. at 40. As to Sanks's computer, the investigators found no inappropriate activity. Id. at 41. The investigators also reviewed additional surveillance footage to determine whether Sanks and Plaintiff had a pattern of suspicious activity. Id. at 41-42. Ultimately, the investigation was closed as unfounded. Id. at 43.

After the investigation was closed, Sanks was allowed to return to work on April 3, 2015. Id. at 48-49. Upon his return, Sanks was asked to resign as head football coach, and he was ordered to change the way he interacted with students. Id. Moreover, Sanks was no longer afforded a private office. Id. at 50.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Allen, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." Id. After the movant satisfies this initial burden, the burden shifts to the nonmovant who must then present evidence indicating that summary judgment is improper. Id. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

Title IX provides, in pertinent part, that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected

to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  In <u>Franklin v. Gwinnett County Public Schools</u>, the Supreme Court of the United States recognized an implied right of action for money damages against a school district for sexual harassment of a student by a teacher.  503 U.S. 60, 75 (1992).

"[N]ot all sexual harassment by teachers is sufficient to impose liability on a school district."  <u>Doe v. Sch. Bd. of Broward Cnty.</u>, 604 F.3d 1248, 1254 (11th Cir. 2010).  This is because Title IX is predicated upon notice to an appropriate person and an opportunity to rectify any violation, and therefore "school districts may not be held liable on a theory of *respondeat superior* or mere constructive notice."  <u>Id.</u>  Instead, "Title IX liability arises only where 'an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct.'"  <u>Id.</u> (quoting <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274, 277 (1998)).  Three related inquiries are necessary in determining whether summary judgment is appropriate in a Title IX case.  To survive summary judgment, a plaintiff must be able to:

> 1) identify a person with "authority to take corrective measures in response to actual notice of sexual harassment," 2) demonstrate that the notice was "sufficient to alert the school official of the possibility of the Title IX plaintiff's harassment,"

> and 3) show that the authority figure acted with deliberate indifference to the notice of harassment.

J.F.K. v. Troup Cnty. Sch. Dist., 678 F.3d 1254, 1255–56 (11th Cir. 2012) (quoting Broward, 604 F.3d at 1254).

In its Motion for Summary Judgment, Defendant contends that Plaintiff cannot satisfy either the second or third inquiries above. The Court agrees.

1. Actual Notice

Defendant contends that Plaintiff cannot show that an official had actual notice of Sanks's alleged sexual abuse of Plaintiff. To satisfy this inquiry, a plaintiff must show that the actual notice was "sufficient to alert the decision-maker to the possibility of sexual harassment by the teacher." Id. at 1256. "There are different ways by which such actual notice may be satisfied." Id. at 1260. In this case, one way Plaintiff could satisfy this burden is to show that Principal Taylor had knowledge that Sanks was "actually sexually harassing" Plaintiff. Id. That is not the case here given that no one observed the sexual harassment or abuse and Plaintiff repeatedly denied that anything inappropriate had occurred with Sanks. Another way Plaintiff could satisfy this burden is to show that Principal Taylor had knowledge that Sanks sexually harassed or abused other students. That is also not the case here as there were no reports that Sanks was inappropriate with other students.

10

In analyzing what Principal Taylor knew in this case, he knew that Plaintiff and Sanks were alone together in Sanks's office. He also knew that Sanks and Plaintiff denied any inappropriate activity and that their denials raised some concerns. Moreover, Principal Taylor knew that Plaintiff deleted text messages and that Sanks's computer was free of any inappropriate material. Ultimately, with this record, Principal Taylor's knowledge was not enough to put him on actual notice that there was a risk of sexual harassment against Plaintiff by Sanks. See id. at 1261 (finding that the plaintiff failed to show actual notice even where the principal knew that there were numerous complaints from teachers and parents about one teacher's conduct with a particular student, that the suspected teacher gave the particular student expensive gifts and rides against his parent's wishes and that the suspected teacher had been seen sharing a towel with the student at a pool party and spending time alone with the student inside her house). The Court is satisfied that Principal Taylor did not have actual notice, especially since Principal Taylor knew that Sanks and Plaintiff's family were family friends. See id. (recognizing that the lack of actual notice was made clearer because the principal knew that the student was often a guest in the home of the teacher's family). In conclusion, the Court finds that the information of which Principal Taylor had

knowledge is not enough to create a genuine issue of material fact, and therefore summary judgment is appropriate on this basis alone.

2. Deliberate Indifference

Even if Plaintiff had shown that Defendant had actual notice of the harassment, her claim still fails. As stated previously, a Title IX plaintiff must show that the official with notice of the harassment was deliberately indifferent to the misconduct. "Deliberate indifference is an exacting standard; school administrators will only be deemed deliberately indifferent if their 'responses to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" Broward, 604 F.3d at 1259 (quoting Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648 (1999)). Significantly, deliberate indifference has been described by the Supreme Court as "an official decision by [the person with notice] not to remedy the violation." Gebser, 524 U.S. at 290. Indeed, a school district is not deliberately indifferent "simply because the measures it takes are ultimately ineffective in stopping a teacher from harassing the plaintiffs." Sauls v. Pierce Cnty. Sch. Dist., 399 F.3d 1279, 1285 (11th Cir. 2005).

In this case, Plaintiff argues that Defendant was deliberately indifferent because it outsourced some of the investigation to the police and failed to ensure that officials received training in the handling of sex abuse. Plaintiff also argues

12

that Defendant was deliberately indifferent because it did not provide Plaintiff with supporting measures after the investigation. Finally, Plaintiff contends that Defendant was deliberately indifferent because Plaintiff was not informed of her rights under Title IX and was misled about her status as a crime victim. None of these reasons are sufficient to show Defendant's response was clearly unreasonable in light of the known circumstances.

Even after drawing all reasonable inferences in favor of Plaintiff, this Court finds that Plaintiff has failed to create a genuine issue of material fact that Defendant acted with deliberate indifference. The morning after a security guard reported seeing Plaintiff and Sanks together in Sanks's office, Principal Taylor ordered an investigation. The investigation was thorough. As part of the investigation, two assistant principals conducted interviews. More particularly, they interviewed Sanks, two other football managers, Plaintiff's mother and Plaintiff herself (twice). During these interviews, Plaintiff never disclosed any sexual abuse, and no one reported witnessing any sexual abuse. The assistant principals also reviewed surveillance video. Moreover, Principal Taylor also asked a School Resource Officer to take part in the investigation. That led to further interviews of Plaintiff, Plaintiff's mother and Sanks. While portions of these interviews raised concerns for the investigators, Plaintiff continued to deny any

inappropriate conduct. The investigators also reviewed additional surveillance footage, analyzed Sanks's computer and attempted to obtain Plaintiff's text messages. Even though the investigation was inconclusive, Defendant instituted corrective measures. Those measures included removing Sanks as head football coach, moving Sanks's office and instructing him to change his behavior.

This Court recognizes that Defendant's actions were ultimately ineffective in preventing Sanks from sexually harassing Plaintiff.[2] However, the relevant question is whether Defendant's actions amounted to deliberate indifference. The steps Defendant took in investigating the incident and implementing corrective measures establish as a matter of law that Defendant did not make an official decision to ignore known sexual harassment but took diligent steps to discover and remediate any sexual misconduct. See Davis v. DeKalb Cnty. Sch. Dist., 233 F.3d 1367, 1375 (11th Cir. 2000) (holding as a matter of law that the school district was not deliberately indifferent when it conducted interviews and instituted corrective measures). As a result, summary judgment is appropriate in this case.

---

[2] The Court is required to accept Plaintiff's allegation as true that Sanks continued to sexually harass her after March 24, 2015.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 86] is **GRANTED**. Plaintiff's claims against Defendant Sanks remain pending. As a result, Plaintiff and Defendant Sanks are **HEREBY ORDERED** to file the Consolidated Pretrial Order required by Local Rule 16.4 within twenty-one days of entry of this Order. The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal of the case or entry of default judgment. In the event a Consolidated Pretrial Order is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the twenty-one-day period.

**SO ORDERED** this 28th day of March, 2022.

J. P. BOULEE
United States District Judge